**AETNA LIFE & CASUALTY,**
Appellant–Defendant,

v.

**PATRICK INDUSTRIES, INC.,**
Appellee–Plaintiff.

**No. 20A04–9406–CV–228.**

Court of Appeals of Indiana,
Fourth District.

Jan. 17, 1995.

Rehearing Denied March 3, 1995.

Robert T. Sanders III, Matthew A. Yeakey, Daniels, Sanders, Pianowski, Hamilton & Todd, Elkhart, for appellant.

James V. Woodsmall, Warrick & Boyn, Elkhart, for appellee.

1. We do not reach the second issue raised by Aetna: Whether the insured is precluded from recovering under the Comprehensive General Liability (CGL) policy due to the operation of ex-

**OPINION**

RILEY, Judge.

### STATEMENT OF THE CASE

This is a permissive interlocutory appeal from an order denying Defendant–Appellant's Aetna Life and Casualty (Aetna) motion for partial summary judgment and granting Plaintiff–Appellee's Patrick Industries (Patrick) motion for partial summary judgment in a complaint for insurance coverage.

We reverse and remand.

### ISSUES

Aetna raises two issues for our review.[1] We find the following issue dispositive of this appeal:

 1. Whether the Comprehensive General Liability (CGL) policy, which provides coverage for physical injury to tangible property, extends coverage for diminution in value of products containing defective components supplied by the insured.

### FACTS AND PROCEDURAL HISTORY

Patrick, the insured, is a supplier who purchased particleboard from Ponderosa Products, a manufacturer of particleboard. Upon obtaining the particleboard from Ponderosa, Patrick glued a vinyl covering onto it and then sold the vinyl covered 4 × 8 sheets of particleboard to Fleetwood Folding Trailers, Inc., (Fleetwood). Fleetwood then cut and routed the particleboard into various shapes and sizes, installed a T-molding on the edges of the cut board, and assembled it into various furniture products for its folding camper trailers. The vinyl covered particleboard furniture products were then installed in the Fleetwood folding camper trailers.

The problems which gave rise to this lawsuit arose when Fleetwood discovered that the vinyl that Patrick glued to the particleboard was peeling off. Patrick attempted to remedy the problem by using a different glue

press exclusions in the policy. Patrick's policy expressly excludes coverage for property damage to the named insured's own products or work.

application. When this effort failed to correct the problem, Patrick began purchasing the particleboard from Temple Products and discontinued its dealings with Ponderosa. Patrick's change of manufacturers remedied the problem.

However, Fleetwood had already installed the furniture products, made with the defective particleboard manufactured by Ponderosa, into its campers throughout the United States. To cure the problem, Fleetwood manufactured non-defective replacements and sent employees to each of its dealers to replace the defective products. As a result, Fleetwood incurred expenses of approximately $200,000. Patrick paid Fleetwood $210,000 in settlement of Fleetwood's claim. Subsequently, Patrick forwarded a proof of loss to Aetna seeking coverage under its CGL policy for its settlement with Fleetwood. Aetna denied coverage.

Patrick filed a complaint against Aetna alleging that Aetna issued a Master Insurance Policy that included commercial general liability (CGL) insurance. Patrick further alleged that Fleetwood's camper trailers were diminished in value as a result of Patrick's defective particleboard, and Aetna wrongfully denied coverage. Aetna alleged that the CGL policy contains exclusions of coverage which preclude coverage of Patrick's claim.

Patrick and Aetna filed motions for partial summary judgment. After hearing argument on the parties' respective motions and taking the matter under advisement, the trial court entered its order granting Patrick's motion and denying Aetna's motion. In its thorough and well-articulated order, the trial court concluded that Patrick's claims were entitled to coverage under the CGL policy, and thus that Patrick was entitled to judgment as a matter of law. The court said that the diminution in value claimed by Fleetwood constituted "property damage" and therefore was entitled coverage by the CGL policy and that the exclusions in the CGL policy did not preclude coverage for Patrick's losses.

Aetna sought certification from the trial court for interlocutory appeal, which the trial court granted. This court granted the inter-locutory appeal in June, 1994, and the record was submitted in August, 1994.

## DISCUSSION AND DECISION

### Standard of Review

Before reaching the merits of this appeal, we recite the familiar standard of review by which we review the granting of motions for summary judgment. When reviewing the trial court's ruling on a motion for summary judgment, this court applies the same standard as the trial court. *American Family Mut. Ins. Co. v. Dye* (1994), Ind.App., 634 N.E.2d 844, 846, *reh'g denied.* Thus, no deference is given to the trial court's judgment. *Foreman v. Jongkind Bros., Inc.* (1994), Ind.App., 625 N.E.2d 463, 467, *reh'g denied.* Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). When reviewing cross motions for summary judgment, the inquiry remains the same: whether a genuine issue of material fact exists which requires resolution by the trier of fact. *American Family Mut. Ins.*, 634 N.E.2d at 846.

Summary judgment based upon construction of an insurance contract is a determination, as a matter of law, that the contract is unambiguous. *Terre Haute First Nat. Bank v. Pacific Employers Ins. Co.* (1994), Ind.App., 634 N.E.2d 1336, 1337. The construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Id.*

### "Property Damage" under the CGL Policy

The dispositive issue is whether the CGL policy, which provides coverage for physical injury to tangible property, extends coverage for diminution in value of products containing defective components supplied by the insured.

Aetna contends that the CGL policy does not afford coverage for Patrick's claim. Specifically, Aetna argues that Patrick's claim that its defective products caused a diminution in value to Fleetwood's camper

trailers does not amount to "property damage" within the meaning of the policy. The CGL policy reads in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result....

(R. 45). Property damage is defined in the policy as

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that' caused it.

(R. 58). In interpreting an insurance contract, the language of the contract is given its plain and ordinary meaning. *Terre Haute First Nat. Bank,* 634 N.E.2d at 1338. Aetna contends that "[i]t is not claimed nor are there any facts to support a claim that Fleetwood's property was physically injured by Patrick's defective vinyl covered particleboard products. No claim is made that the failure of the Patrick vinyl covered particleboard products physically damaged the Fleetwood camper trailers, but merely that the campers were less valuable because the defective products were incorporated into them." Appellant's Brief at 12.

■ Before addressing the relative merits of this issue, we must discuss the general nature of the CGL policy and its most recent revision. We first note that CGL policies contain language which is industry-wide and part of a standard form. This case turns on the interpretation of language contained in this standardized liability policy. Because of

a continuing attempt at clarity, the industry has revised the standard form several times. The 1966 version and the 1973 version are relevant to this appeal. The 1966 version defined "property damage" as "injury to or destruction of tangible property." *Eljer Mfg., Inc. v. Liberty Mut. Ins. Co.* (7th Cir. 1992), 972 F.2d 805, *cert. denied.* Under this definition of property damage, there is no doubt that diminution in value was a covered loss.[2] However, the insurance industry revised the definition of property damage in 1973; the updated version was used in the Aetna policy. The 1973 policy specifically qualified "injury to tangible property" with the word "physical" modifying "injury".

The precise issue we must decide is whether the incorporation theory survived the 1973 definitional change of property damage. Many courts have used the theory under the prior definition to hold that the incorporation of a defective component into a structure or other product, which causes diminution in value, inflicts physical injury on the structure or other product.

Under the 1966 definition which merely requires "injury", the majority of courts have correctly construed the language as including both physical and non-physical injury. Thus, because diminution in value injures the property at issue, it satisfies the 1966 definition of property damage. However, in our view, a different result is merited under the 1973 definition.

In *Indiana Ins. Co. v. DeZutti* (1980), Ind., 408 N.E.2d 1275, the Indiana supreme court held that CGL policies do not cover reimbursement to a builder for expenses incurred for the repair or replacement of his own faulty workmanship. *Id.* at 1279. Gilson, the insured, was a contractor who sold a home to the DeZutti's. The mortar and bricks of the home began cracking, and the DeZutti's brought an action against Gilson. Indiana Insurance, when faced with providing a defense for Gilson, claimed that the loss was not covered by the post–1973 CGL poli-

---

2. *See Bowman Steel Corp. v. Lumbermens Mut. Cas. Co.,* 364 F.2d 246 (3rd Cir.1966) (defective siding); *Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co.,* 51 Cal.2d 558, 564, 334 P.2d 881 (1959) (defective doors); *Hauenstein v. Saint Paul Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954) (defective plaster); *Dakota Block Co. v. Western Casualty & Sur. Co.,* 81 S.D. 213, 132 N.W.2d 826 (1965) (defective concrete block). Each of these cases interpreted "injury to or destruction of property" to include diminution in value of property.

cy. The court interpreted the terms of the standard CGL policy and concluded that the risk which these policies intended to cover was a risk of personal injury or damage to property other than the insured's own work or product. The court quoted at length from a law review article:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.... The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

*Id.* at 1279 (quoting Henderson, "Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know," 50 Neb.L.Rev. 415, 441 (1971)). The majority of courts that have interpreted the modified definition of property damage have held that intangible damages, such as diminution in value, do not constitute property damage.

After a careful consideration of the abundant persuasive authority on this issue, we have no hesitation in concluding that diminution in value is not property damage within the meaning of the 1973 definition. In *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 282 Or. 401, 578 P.2d 1253 (1978), the supreme court of Oregon rejected the insured's plea for coverage. The court expressly stated that

> [t]he inclusion of [the] word ['physical'] negates any possibility that the policy was intended to include 'consequential or intangible damage,' such as depreciation in value, within the term 'property damage'. The intention to exclude such coverage can be the only reason for the addition of the word.

*Id.* at 1256. *See also Federated Mut. Ins. Co. v. Concrete Units, Inc.*, 363 N.W.2d 751 (Minn.1985) (in interpreting the 1973 definition of property damage, the Minnesota Supreme Court expressly rejected its earlier decision in *Hauenstein*, 65 N.W.2d 122, which adopted the diminution in value theory); *Milgard Mfg., Inc. v. Continental Ins. Co., Inc.*, 92 Or.App. 609, 759 P.2d 1111 (1988) (diminution in value does not come within physical injury component of 1973 property damage definition).

The trial court and Patrick rely primarily on three cases. The first case upon which they rely is *Eljer Mfg., Inc.*, 972 F.2d 805. In *Eljer* the Seventh Circuit interpreted the 1973 CGL policy definition of "property damage." In *Eljer*, the insured was a manufacturer of a plumbing system. Eljer ultimately incurred tort liability in the hundreds of millions of dollars due to system failures after installation. Eljer's CGL carrier denied coverage. The issue before the court was whether the incorporation of one product into another can be said to cause physical injury within the meaning of the policy.

After considering the drafting history of the CGL policy and the general purposes behind commercial insurance, the court concluded that the incorporation of a defective product into another product inflicts "physical injury" on the latter within the meaning of the 1973 property damage definition. *Id.* at 814.

The trial court and Patrick further rely on *Imperial Cas. & Indem. v. High Concrete Structures* (3rd Cir.1988), 858 F.2d 128, *reh'g denied.* In *Imperial,* High Industries was a distributor of sheet steel which held CGL insurance with USF & G. Keystone, a manufacturer of steel washers contacted High to purchase some steel to make its washers. Because High did not possess the requisite technology, it contacted a third party to perform a manufacturing process on the steel. The third party delivered the finished steel to High, and High supplied the steel to Keystone. Keystone manufactured the washers and sent them out to be heat treated. Defects became apparent during the heat treatment of the washers. High brought a claim with USF & G, which was denied.

High's CGL policy with USF & G defined property damage with the revised 1973 language, and thus was virtually identical to Aetna's policy. High argued that the dam-

age to the washers was property damage caused by an occurrence, i.e. the heat treatment. USF & G did not dispute those facts; however, it took issue with the assertion that the heat treatment caused property damage to property other than the insured's own product, and thus coverage was excluded. *Id.*

The Third Circuit held that High's steel was transformed into a new product by being cut and shaped into beveled washers, and thus there was damage to more than just the insured's product. *Id.* Because the Third Circuit in *Imperial* based its decision on the "property damage to the Named Insured's products" policy exclusion, it is not particularly germane to the issue before us. However, we find it instructive because of its interpretation of the property damage definition.

The trial court and Patrick also rely heavily on *U.S. Fidelity & Guaranty Co. v. American Ins. Co.* (1976), 169 Ind.App. 1, 345 N.E.2d 267, for the proposition that once an insured's defective product is incorporated into its customer's product, property damage to the customer's entire product is caused by a diminution in value of the customer's product. This is the only Indiana case which squarely addresses this issue. In *USF & G,* the insured manufacturer of bricks supplied defective bricks which were used to build a home. The bricks began chipping and the insured settled a claim with the homeowner for the damage done to the home. The insured submitted a claim to the insurer, which the insurer refused to pay. An exclusion in the USF & G policy provided that it did not apply to "property damage to the named insured's products arising out of such products or any part of such products." *USF & G,* 345 N.E.2d at 271. Thus, clearly the insured could not be reimbursed by the insurer for replacement of his individual component parts after they have been incorporated into a structure. The court construed property damage as meaning "damage to the structure." *Id.* at 271. Aetna correctly points out that the Second District based its decision on an interpretation of the pre–1973 definition of property damage.[3]

However, the Illinois appellate court addressed the post–1973 definition of property damage and stated that

> [Nowhere] have we found an Illinois case which squarely holds that there must be physical harm to the completed product before an insured may recover for property damage under the general liability policy. However, ... [the] majority position ... holds that the term 'property damage' includes tangible property which has been diminished in value or made useless irrespective of any actual physical injury to the tangible property.

*Marathon Plastics, Inc. v. International Ins. Co.* (1987), 161 Ill.App.3d 452, 112 Ill.Dec. 816, 822, 514 N.E.2d 479, 485, appeal denied. The Illinois court held that damage to the completed product exclusive of the value of the defective component did constitute damage to tangible personal property within the meaning of the policy.

These cases on their face support the conclusion that the Aetna policy should extend coverage for Patrick's claim. Analogously, we could hold that the damages sought herein are for the diminution in value of Fleetwood's trailers. There is no recovery being sought for the value of the defective particle board or the replacement particle board, merely for the removal and replacement of the particle board. However, we think that the better result is to keep "diminution in value" and "physical injury" separate and distinct.

The definition used in Aetna's policy requires *physical* injury to tangible property. The intent of the insurance industry in including this qualifying word was to exclude intangible damage. As one scholar has stated "[d]iminution in value of tangible property is an incorporeal and intangible harm mea-

---

**3.** The court in USF & G relied on *Hauenstein,* 65 N.W.2d 122, and its progeny, which adopted the accession theory and held that notwithstanding the lack of physical damage to a structure into which a defective product has been incorporated, the diminution in value of the structure caused by the incorporation of the defective product constitutes property damage within the meaning of the CGL policy. This analysis is correct under the 1966 CGL, but in our opinion, is of dubious value regarding the issues before us today.

sured by market forces, not an injury to the material substance of the tangible property." Vasichek, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive General Liability Policy,* 68 Minn.L.Rev. 795, 811 (1984).

We feel confident in assuming that the commercial parties to CGL policies bargain for limited coverage in exchange for modest premiums. The concept of incorporation should not be extended so that physical injury will be deemed to occur every time a defective component is integrated into another's tangible property. We agree with the trial court that there are no genuine issues of material fact; however, we disagree with the trial court's application of the law to the undisputed facts. We therefore reverse the trial court's entry of summary judgment in favor of Patrick and remand with instructions for the trial court to enter an award of summary judgment for Aetna.

■ Our result today gives effect to the insurance industry's intent; yet does not render the insurance coverage illusory. CGL insurance is not intended to cover, nor will we extend coverage to the type of intangible economic loss that Patrick is seeking. In our opinion, Patrick is seeking coverage that is beyond the contemplation of Aetna's policy. Because Patrick's claim fails the definitional requirement of "property damage", we do not reach the applicability of the various policy exclusions.

### CONCLUSION

We reverse the trial court's entry of summary judgment for Patrick and remand with instructions for the trial court to enter summary judgment in favor of Aetna.

DARDEN, J., concurs.

SHARPNACK, J., concurs in result.