IDS PROPERTY CASUALTY INSURANCE COMPANY, Appellant (Defendant Below),

v.

Lewis C. KALBERER and Jeannette J. Kalberer, Co–Guardians of the Estate of James A. Kalberer, Appellees (Plaintiffs Below).

No. 45A04–9503–CV–92.

Court of Appeals of Indiana.

Feb. 22, 1996.

Transfer Denied June 26, 1996.

Kenneth M. Wilk, Highland, for appellant.

Angelo A. Buoscio, Buoscio, Pera, Kramer & Nowak, Merrillville, for appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

IDS Property Casualty Insurance Company appeals a summary judgment entered in favor of Lewis C. and Jeannette J. Kalberer. We reverse.

### ISSUE

Whether the trial court correctly determined that the Kalberers' son was entitled to uninsured motorist and medical expense insurance coverage under their policy with IDS.

### FACTS

Lewis Kalberer procured from IDS Property and Casualty Insurance Company a policy for the period from March 20, 1991 to September 1991. On April 28, 1991, James Kalberer ("James") was struck by an automobile owned and operated by Paul Douglas. James was operating a moped, owned by his father, Lewis Kalberer.

As his co-guardians, James' parents negotiated a settlement with Douglas' insurance company in the amount of his policy limits, $25,000. The Kalberers then brought this action against IDS, claiming on the IDS policy under the underinsured motorists provision and the medical expense provision.

Both IDS and the Kalberers sought summary judgment. A statement of agreed facts was filed. The question of law for the trial court was whether the two insurance policy provisions entitled James' co-guardians to recover for him. The trial court denied IDS's summary judgment motion and granted the Kalberers' motion, finding James to be "afforded coverage under ... both" provisions. (R. 335).

## DECISION

IDS argues that the provisions of the insurance contract do not apply so as to cover the damages sustained by James. The Kalberers contend coverage indeed exists because the policy "did not specifically exclude" the circumstance of James being "involved in a car accident ... while riding his Moped, a motorized bicycle under Indiana law." Kalberers' Brief at 10.

■ The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law. *Liberty Mutual v. Metzler* (1992), Ind.App., 586 N.E.2d 897, *trans. denied.* When reviewing a trial court ruling on a motion for summary judgment, this court applies the same standard as the trial court. *Aetna Life & Casualty v. Patrick Industries* (1995), Ind.App., 645 N.E.2d 656, 658, *trans. denied.* Thus, no deference is given to the trial court's judgment. *Id.* The interpretation of an insurance policy is primarily a question of law for the court. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668. Insurance policy language which is clear and unambiguous should be given its plain and ordinary meaning. *Id.* Thus, we turn to the provisions of the insurance contract in order to determine whether "as a matter of law, ... the contract is unambiguous," *Aetna, supra* at 658, and whether as a matter of law James' damages

are covered under both the underinsured motorist and the medical benefits provisions.

The policy first defines the following underlined terms when used in the policy text:

A *car* is a 4 wheel motor vehicle licensed for use on public roads. It includes any motor home that isn't used for business purposes and any utility trailer.

A *motor vehicle* is a land motor vehicle designed for use on public roads. It includes cars and trailers. It also includes any other land motor vehicle while used on public roads.

*Occupying* means in, on or getting in or out of.

*You, your* means the person named on the declarations page and the person's husband or wife if a resident of the same household.

*You, your* also means a member of the family who is a resident of the household.

(R. 21).

### A. *Underinsured Motorists Coverage*

■ The liability insurance section begins with IDS's "promises" to the policy holder: "We promise to pay damages for bodily injury or property damage for which the law holds *you* responsible because of a car accident involving a *car* we insure. (Bold emphasis added). (R. 22).

The uninsured motorist/underinsured motorist ("UM") provision promises:

to pay the damages you're legally entitled to receive from the owner or operator of ... an underinsured motor vehicle because of bodily injury ... We'll pay these damages for bodily injury or property damages ... you suffer in a car accident while occupying a car or, as a pedestrian, as a result of having been struck by an ... underinsured motor vehicle.

(R. 25).

In its argument to the trial court and its brief, IDS insists that because James was neither a car occupant nor a pedestrian at the time of the accident, the underinsured motorist coverage provided by the policy does not apply.

At the time of the accident in which James was injured, our statute regarding UM coverage, Ind.Code 27–7–5–2(a)(1)[1] required insurers to:

> make available, in each automobile liability or motor vehicle liability policy of insurance ... insuring against loss resulting from liability imposed by law for bodily injury ... suffered by any person [the minimum amounts of coverage prescribed in the financial responsibility standards in I.C. 9–25–4–5] for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury....

The Kalberers direct us to the UM statute and contend that IDS's policy restriction violates its requirement that insurers "provide personal insurance coverage." (R. 254). To the trial court, Kalberers cited *State Farm Mut. Auto Insurance v. Robertson* (1973), 156 Ind.App. 149, 295 N.E.2d 626, where a policy exclusion denying coverage for son's injuries sustained while on father's motorcycle, which was not insured by father's automobile liability insurance policy, under that policy's UM coverage was held "invalid" as "in conflict with and more restrictive than" Indiana's UM statute. (R. 255). Robertson's policy said UM coverage did not apply "to bodily injury to an insured while occupying ... a land motor vehicle owned by the named insured or resident of the same household if such vehicle is not an 'insured vehicle.'" *Robertson*, 295 N.E.2d at 628. In their brief and at oral argument, the Kalberers insist that requiring James to be occupying an insured vehicle was directly rejected by the case on which *Robertson* relied— *Cannon v. American Underwriters, Inc.* (1971), 150 Ind.App. 21, 275 N.E.2d 567. Cannon's policy limited UM coverage to when "the insured" was "operating or occupying an insured automobile," *id.*; thus, the insured's minor daughter was not covered as an occupant of an uninsured motorists' vehicle. According to the Kalberers, their authority makes impermissible the attempt of IDS to restrict UM coverage because in doing so IDS has contravened the public policy of UM—the protection of persons insured under the insurance policy.

IDS directs us to a series of cases, described as "more recent" in their oral argument, which apply the analysis of *Peterson v. Universal Fire & Casualty Co.* (1991), Ind. App., 572 N.E.2d 1309, to determine whether a UM restriction is forbidden by the Indiana statute: when "an insurance policy specifically limits its [UM] protection as to persons who would otherwise qualify as insureds for liability purposes." *Id.* at 1312. In accordance with this analysis, IDS notes, exclusions of coverage were permitted and upheld in other cases such as *Millspaugh v. Ross* (1994), Ind.App., 645 N.E.2d 14 (adult son, not living with mother, who was injured when a passenger in rental car was not within coverage of mother's UM insurance).

What has apparently gone unnoticed by both parties is the action of the legislature between the time of *Cannon* and *Robertson* and the later cases allowing certain exclusions. New statutory language directly affects the current vitality of *Robertson* and affects application of some of the language of *Cannon*. Effective September 1, 1982, when UM coverage:

> is written to apply to one (1) or more motor vehicles under a single automobile liability policy, such coverage applies only to the operation of those motor vehicles for which a specific [UM] premium charge has been made and does not apply to the operation of any motor vehicles ... owned by the named insured for which a premium charge has not been made.

I.C. 27–7–5–5(b). The statutory provision suggests that our legislature agrees with the reasoning of *Insurance Law and Practice:*

> Most policies limit the basic UM coverage to the vehicle upon which it was purchased, except as to the carryover effect when operating, or riding in, a nonowned vehicle. It is scarcely the purpose of any insurer to write a single UM coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon

1. The statutory provision in effect until January 1, 1995.

all other vehicles—any more than it would write liability, collision, or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved. Nor would any reasonable person so expect. It would be actuarially unsound.

John Alan Appleman & Jean Appleman, 8C *Insurance Law and Practice* § 5078.15 at 179 (1981).

■ Thus, the legislature intended that insurance companies be allowed to limit their UM coverage to vehicles insured under the policy when the vehicle is an owned one. *See U.S. Fidelity & Guar. v. DeFluiter* (1983), Ind.App., 456 N.E.2d 429. The legislature defines public policy through enactment of statutes. *Id.* at 432 (citing *Bissell Carpet Sweeper Co. v. Shane Co., Inc.* (1957), 237 Ind. 188, 143 N.E.2d 415). Further, as a parallel consideration, Indiana courts have long held that the legislature intended only those persons insured under the liability portion of the policy should be entitled to coverage under the uninsured motorist provision. *Vernon Fire & Casualty Ins. Co. v. American Underwriters, Inc.* (1976), 171 Ind.App. 309, 356 N.E.2d 693; *Harden v. Monroe Guar. Ins. Co.* (1993), Ind.App., 626 N.E.2d 814, *trans. denied.* This linkage between UM coverage and liability coverage "is to reward those who obtain insurance coverage for the benefit of those they might injure." *Anderson v. State Farm Mut. Auto. Ins. Co.* (1984), Ind.App., 471 N.E.2d 1170, 1175.

■ The moped was not a vehicle on the insurance policy for which a UM premium charge had been made, and according to the agreed statement of facts, the moped James rode was owned by Lewis Kalberer. Thus, according to statute, UM coverage would not apply. Further, the Kalberer policy provided liability coverage only for damage "for which the law holds you responsible because of a car accident involving a car we insure." No car insured by the Kalberer policy was involved in the accident. James, being uninsured for purposes of liability coverage under the Kalberer insurance policy, may be excluded from coverage under the policy's UM provision. *Anderson, supra* at 1175.

### B. Medical Expense Insurance

The policy promises "to pay medical expenses for *your* bodily injury ... suffered in a car accident while occupying a car or from having been struck by a motor vehicle." Below in bold print, "Those not protected" enumerates exclusions, one of which states, "Anyone occupying ... a *motor vehicle* owned by *you* ... and not insured under this insurance isn't protected by this insurance."

■ The Kalberers complaint states that James "at the time of the ... accident ... was riding a ... moped defined by I.C. 9–13–2–109 as a motorized bicycle." (R. 13). The cited statutory definition provides that:

"Motorized bicycle" means a two (2) or three (3) wheeled vehicle that is propelled by an internal combustion engine or a battery powered motor, and if powered by an internal combustion engine, has the following:

(1) An engine rating of not more than two (2) horsepower and a cylinder capacity not exceeding fifty (50) cubic centimeters.

(2) An automatic transmission.

(3) A maximum design speed of not more than twenty-five (25) miles per hour on a flat surface.

I.C. 9–13–2–109. Accordingly, we conclude that James rode a motor vehicle.

■ Applying the policy definitions quoted at the outset, we find it inescapable that as a matter of law James was not covered under the medical expense insurance provision inasmuch as he was occupying a motor vehicle owned by Kalberer and not insured under the policy.

The order of summary judgment is reversed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

CHEZEM, J., concurs in result with separate opinion.

SULLIVAN, J., concurs with separate opinion.

CHEZEM, Judge, concurring in result opinion.

I concur in the result reached by the majority. Pursuant to the Indiana Code, a moped is not a motor vehicle. IC 9–13–2–105. However, the contract of insurance in this case defines motor vehicle as a "land motor vehicle designed for use on public roads." Because a moped can be powered by either its motor or its pedals, and it is designed for use on the public roads, it is a motor vehicle pursuant to the *contract definition.* As such, I concur in the result only.

SULLIVAN, Judge, concurring.

I concur in the conclusion of Judge Darden's lead opinion which states that Kalberers' son is not entitled to recover under the underinsured motorist provision. I reach that conclusion not because the moped upon which James was riding was not an insured vehicle under the policy, but rather because the clear language of the policy provision excludes such coverage.

As correctly noted in Judge Darden's opinion, and as recently stated in *Ramirez v. American Family Mutual Insurance Co.* (1995) Ind.App., 652 N.E.2d 511, 515: "'An insurance company is free to limit its liability in any manner not inconsistent with public policy, and an unambiguous exclusionary clause in ordinarily entitled to construction and enforcement.'"

The basic uninsured-underinsured motorist coverage in the policy before us covers a person "while occupying a car or, as a pedestrian". The moped occupied by James was clearly not a car as defined within the policy itself. It is also clear that he was not a pedestrian.

With respect to the medical benefits coverage, the policy covers a person "in a car accident while occupying a car or from having been struck by a motor vehicle." Although, as earlier noted, James was not occupying a car, he was involved in a "car accident" and was "struck by a motor vehicle". Nevertheless, the policy contains a

clear provision which excludes "Anyone occupying ... a motor vehicle owned by you ... and not insured under this insurance." It is undisputed that the moped is a motor vehicle,[2] was owned by Lewis Kalberer and was not insured under the policy. For the reasons stated, I concur in the decision which reverses the summary judgment entered in the trial court.

---

2. I.C. 9–13–2–105, cited in Judge Chezem's separate opinion, defines "motor vehicle" only for purposes of I.C. 9–21 dealing with traffic regulations. It does not exclude mopeds from the definition of "motor vehicles" in all contexts and for all purposes. As Judge Chezem notes, a moped "is a motor vehicle pursuant to the contract definition."