Jeffrey Ryan NEAL, a minor, Kris Neal and Billy Neal, Plaintiffs,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY and American Family Insurance Group, Defendants.

No. IP–95–0647–C–D/F.

United States District Court, S.D. Indiana, Indianapolis Division.

Aug. 9, 1996.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, IN.

Samuel L. Jacobs, Kimberly H. Danforth, Mitchell Hurst Jacobs & Dick, Indianapolis, IN.

ENTRY

**DILLIN, District Judge.**

This cause comes before the Court on Defendants' and Plaintiffs' motions for summary judgment. For the following reasons, Defendants' motion is GRANTED and Plaintiffs' motion is DENIED.

### Background

Plaintiff Jeffrey Ryan Neal (Jeffrey) is the son of Billy Neal (Billy) and Kris Neal (Kris). On April 29, 1993, Jeffrey was operating his father's Honda Passport (or moped)[1] in Muncie, Indiana, when an automobile operated by Harrison Kissick (Kissick) reportedly turned in front of Jeffrey and collided with him. Jeffrey was injured and apparently incurred medical expenses amounting to more than $82,000.

Kissick's insurer paid its $25,000 bodily injury liability limit to plaintiffs. According to defendant, Farmers Insurance Group paid the Neals $75,000 from the underinsured motorist coverage of a policy issued to Billy. Additionally, some of Jeffrey's medical expenses have been covered by the family health plan his mother had through her employment. At the time of Jeffrey's accident, certain insurance the Neals had purchased through American Family Mutual Insurance Company (American Family) was effective, and that insurance policy provided underinsured motorist (or UM) coverage.

The Neals initiated the instant action on April 28, 1995 in Indiana state court, claiming they are entitled to recover from American Family and American Family Insurance Group[2] the difference between their policy's underinsured motorist coverage limit for bodily injury and the amount paid by Kissick's insurer. The defendants removed the case to this Court on May 16, 1995 and moved for summary judgment on April 17, 1996. We turn to a discussion of the issues.

### Discussion

A summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). While facts are viewed in the light most favorable to the nonmoving party, there is an affirmative burden of production on the nonmoving party to defeat a proper summary judgment motion. *Baucher v. Eastern Indiana Prod. Credit Ass'n,* 906 F.2d 332, 334 (7th Cir.1990) (following *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). Before the Court denies summary judgment, it must be determined whether there is sufficient evidence for a jury to find a verdict in favor of the nonmoving party. *Id.* (following *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986)).

■ Presently, this Court's jurisdiction is based on diversity, so we must look to Indiana substantive law. Indiana law holds that an insurance policy is a contract between the insured and the insurer and, thus, the law of contracts controls their legal relationship. *Asbury v. Indiana Union Mut. Ins. Co.,* 441 N.E.2d 232, 236 (Ind.Ct.App. 1982) (citation omitted). In interpreting a contract, a court must give plain and unambiguous policy language its ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987); *Red Ball Leasing v. Hartford Accident & Indem. Co.,* 915 F.2d 306, 308 (7th Cir.1990). However, if the language is ambiguous, the terms should be construed in favor of coverage. *Id.* The language of a policy is ambiguous "if reasonable persons may honestly differ as to [its] meaning." *Eli Lilly,* 482 N.E.2d at 470; *Red Ball Leasing,* 915 F.2d at 308.

---

**1.** Billy and Kris described the Passport as a 1981 red, two-wheeled vehicle with a headlight, tail lights, a horn, turn signals, a one-bench seat and a speedometer. *See* Billy and Kris' Answer to Interrog. 13. Jeffrey referred to the Passport as a moped. *See* Jeffrey's Answer to Interrog. 5.

**2.** According to defendants, American Family Insurance Group is neither an insurer nor an entity of any type. Defendants assert that American Family Insurance Group is a business name under which American Family Mutual Insurance Company conducts business, and that American Family Mutual Insurance Group, itself, does not issue policies of insurance.

In the instant case, American Family contends that the meaning of the insurance policy language in issue is unambiguous; hence, the Court must assign the language its ordinary meaning. In doing so, American Family posits, the Court will conclude that summary judgment in its favor is unavoidable. The Neals counter that the subject language is ambiguous and that, consequently, we must construe the terms of the policy in favor of the insureds. According to the Neals, such construction will direct a summary judgment in their favor. We first examine the policy language in issue.

The Neals' insurance policy included the following underinsured motorist coverage endorsement:

> **We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle.** The **bodily injury** must be sustained by an **insured person** and must be caused by an accident and arise out of the **use** of the, **underinsured motor vehicle.**

Moreover, an "underinsured motor vehicle" was defined in the Neals' policy as

> a **motor vehicle** which is insured by a liability bond or policy at the time of the accident which provides **bodily injury** liability limits less than the limits of liability under this Underinsured Motorists Coverage.

The Neals' American Family policy included the following exclusion to the UM provisions:

> This coverage does not apply for **bodily injury** to a person:
> While **occupying** . . . a motor vehicle that is not insured under this policy, if it is owned by **you** or any resident of **your** household.

The UM coverage endorsement defined "motor vehicle," in relevant part, as "a land motor vehicle or trailer. . . ."

The parties agree that under the terms of the Neal's American Family policy, Kissick's automobile was an underinsured motor vehicle, and that the Neals qualified as insured persons. The parties disagree, however, about the effect of the aforequoted exclusion to the policy's UM coverage. American Family contends that the exclusion clearly prevents the Neals from recovering because Jeffrey was injured while operating a motor vehicle that was owned by the Neals but not insured under their American Family policy.

The Neals counter that portions of the contract language in issue are ambiguous. Specifically, they assert that American Family's definition of "motor vehicle" in its UM provisions of the policy is broader than its definition of "cars" in the policy's liability provisions. It is the latter provisions that stipulate what types of vehicles actually can be insured under the policy.

The Neals first bring to the Court's attention the language of the exclusion clause, wherein coverage is excluded for bodily injury suffered by a person occupying *a motor vehicle* owned by the insured but not insured under the policy. In the UM endorsement of the Neals' policy, a motor vehicle is defined, in relevant part, as a "land motor vehicle." The Neals contend that reference only to this definition of motor vehicle would indicate to the reader that the Passport is a motor vehicle under the terms of the policy.

However, they continue, to determine the meaning of the UM exclusion, the reader must refer to the liability provisions because the exclusion states that bodily injury is not covered if the injured person was occupying a motor vehicle owned by the insured but *not insured under the policy.* The language of the policy's liability provisions stipulates that American Family will be liable only for compensatory damages an insured person "is legally liable for because of **bodily injury** and **property damage** due to the **use** of a **car** or **utility trailer.**" American Family's definitions of "car" and "utility trailer" do not include vehicles such as the Passport. Hence, the Neals complain, there is ambiguity. In the Neals words, "The policy in this case is clearly ambiguous as to the underinsured motorist coverage status of motor vehicles which cannot, by policy definition, be 'insured cars, private passenger cars, or utility trailer[s],' but are nonetheless 'land motor vehicles.' "

The Court regrets Jeffrey's injuries. We, however, cannot find an ambiguity where none exists. Our duty is to give contract language its plain and ordinary meaning, and in adhering to our duty in this case, we find no ambiguity in the language of the policy and/or the exclusion clause in issue. We do not believe use of the phrase "motor vehicle" in the exclusion clause rather than the words "car" and "utility trailer" as used in the liability provisions make American Family's meaning any less clear: the policy offers no coverage for bodily injury an individual suffers while occupying a motor vehicle that, although owned by the insured, is not insured under the subject policy. Consequently, we reject the plaintiffs' contention that ambiguity requires interpreting the policy against American Family.

The Neals also contend that under the liability terms of the policy in issue, they were prevented from purchasing insurance for their Passport. Specifically, they claim that the insurance policy only extends to "cars" and "utility trailers," under which definitions mopeds are not included. The Neals assert that American Family's failure to make UM coverage available for the Passport is a violation of Indiana Code § 27–7–5–2, which requires that insurers make UM coverage available in each motor vehicle liability policy of insurance. American Family advances that its subject exclusion does not violate Indiana statute; in fact, American Family states, the language of its exclusion follows the statutory language.

■ American Family focuses on Indiana Code § 27–7–5–5(b).

> When the coverage specified in this chapter is written to apply to one (1) or more motor vehicles under a single automobile liability policy, such coverage applies only to the operation of those motor vehicles for which a specific uninsured or underinsured motorist premium charge has been made and does not apply to the operation of any motor vehicles insured under the policy or owned by the named insured for which a premium charge has not been made.

*Id.*

We agree with American Family that the statute clearly permits American Family to exclude from underinsured coverage the Neals' moped—owned by Billy, yet not insured by American Family. Significantly, the Indiana Court of Appeals also agrees with American Family's position. In *IDS Property Cas. Ins. Co. v. Kalberer,* 661 N.E.2d 881 (Ind.Ct.App.1996), the court stated that in enacting Indiana Code § 27–7–5–5(b), the "legislature intended that insurance companies be allowed to limit their UM [uninsured/underinsured motorist] coverage to vehicles insured under the policy when the vehicle is an owned one." *Id.* at 885 (citation omitted). The court noted that enactment of Indiana Code § 27–7–5–5(b) indicates that the legislature concurred with the reasoning of *Insurance Law and Practice:*

> "Most policies limit the basic UM coverage to the vehicle upon which it was purchased, except as to the carryover effect when operating, or riding in, a nonowned vehicle. It is scarcely the purpose of any insurer to write a single UM coverage upon one of a number of vehicles owned by an insured, or by others in the household, and extend the benefits of such coverage gratis upon all other vehicles—any more than it would write liability, collision, or comprehensive coverages upon one such vehicle and indemnify for such losses as to any other vehicle involved. Nor would any reasonable person so expect. It would be actuarially unsound."

*Kalberer,* 661 N.E.2d at 884–85 (quoting John Alan Appleman & Jean Appleman, 8C *Insurance Law and Practice* § 5078.15 at 179 (1981)). Consequently, we can only conclude that American Family's UM exclusionary language violates no Indiana statute.

■ Finally, we address the Neals' concern that, given the language of American Family's insurance contracts, they were unable to purchase insurance coverage for Billy's moped. The Neals suggest that even if they had purchased an American Family motorcycle policy to cover Billy's moped, no underinsured coverage would have been available for Jeffrey because of the language in the motorcycle policy.

American Family, however, has included with its reply brief a copy of the subject

Indiana motorcycle policy. The liability provisions of that policy clearly include motorcycles. Moreover, the definition of motorcycles clearly includes mopeds. Hence, if the Neals had purchased motorcycle insurance, UM coverage would have been available to them. The exclusion in the UM coverage would not have precluded coverage under the facts of this case because Jeffrey, who was riding a moped owned by his father, would not have been occupying a motor vehicle that was not insured under the policy. The liability provisions clearly illustrate that the moped, unquestionably a motor vehicle, would have been insured under the policy. *See Kalberer,* 661 N.E.2d at 885 (wherein court concluded that a moped qualified as a motor vehicle).

In conclusion, the Court denies the Neals' motion for summary judgment and grants American Family's motion for summary judgment.