UNITED FARM BUREAU MUTUAL
INSURANCE COMPANY,
Appellant–Plaintiff,

v.

Chadwick OWEN, Appellee–Defendant.

No. 53A01–9509–CV–283.

Court of Appeals of Indiana.

Jan. 29, 1996.

Glenn E. Davis, Sr., Davis, Davis & Langan, Indianapolis, for Appellant.

William H. Kelley, Jennifer A. Bauer, Kelley, Belcher & Brown, Bloomington, for Appellee.

**OPINION**

ROBERTSON, Judge.

United Farm Bureau Mutual Insurance Company (the Company or United Farm Bureau) appeals from summary judgment granted in favor of Chadwick Owen in the Company's pursuit of subrogation for a claim it paid to its insured, Nancy Freyburger. United Farm Bureau presents the following issues:

I. Whether the Trial Court erred by entering summary judgment for defendant, Chadwick Owen (Owen), because the summary judgment was based on an erroneous construction of the Lease between Freyburger and Owen.

II. Whether the Trial Court erred by denying the summary judgment of

Farm Bureau because the summary judgment was based on a construction of the Lease which was error of law.

III. Whether the entry of summary judgment in favor of Owen and the entry denying the summary judgment of Farm Bureau were contrary to law.

We affirm.

The undisputed evidence shows that Owen and four other persons leased a residence from Freyburger in Bloomington, Indiana. The five occupied the premises the night before the power company was to restore electricity to the house. Owen and another tenant started a fire as they used a kerosene lantern during the night. The fire substantially damaged the house. Freyburger had insured the premises with United Farm Bureau and subsequently collected on her claim of $98,247.46. The Company then sought subrogation from Owen and the other tenants. The tenant who had started the fire with Owen settled with the Company for $43,000.32. United Farm Bureau pursued its claim against Owen for the balance of $55,247.14, plus the costs of the action.

As a part of the lease arrangement, the tenants had entered into a lease agreement with Freyburger. Owen claims the lease released him from any liability to Freyburger and, because United Farm Bureau may claim rights only to the extent available to Freyburger, the Company has no right to subrogation. The trial court agreed with Owen and granted his motion for summary judgment. The Company now appeals.

■ On review of a grant of summary judgment, this Court applies the same standard as the trial court. *Aetna Life & Casualty v. Patrick Industries, Inc.* (1995), Ind. App., 645 N.E.2d 656, 658. Summary judgment is appropriate if the designated evidentiary matter shows that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Id.*

■ If a contract is clear and unambiguous, then the language of the contract must be given its plain meaning. *Sharp v. Indiana Union Mutual Insurance Co.* (1988), Ind.App., 526 N.E.2d 237, 239. Nei-

ther party here contends that the language of the lease agreement is ambiguous, but United Farm Bureau claims the trial court improperly applied the language of the lease as a matter of law. We note that the construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Aetna Life*, 645 N.E.2d at 658.

In support of his position, Owen identifies the language of lease under Section 8, which states:

8. INDEMNIFICATION AND RELEASE

Regardless of whether or not, separate, several, joint on concurrent liability may be imposed upon Landlord, Tenant shall indemnify and hold harmless Landlord from and against all damages, claims and liability arising from or connected with Tenant's control or use of the Leased Premises, including without limitation, any damage or injury to person or property. This indemnification shall not include any matter for which the Landlord is effectively protected against by insurance. If Landlord shall, without fault, become a party to litigation commenced by or against Tenant, then Tenant shall indemnify and hold Landlord harmless. The indemnification provided by this Section shall include Landlord's legal costs and fees in connection with any such claim, action or proceeding. Tenant does hereby release Landlord from all liability for any accident, damage or injury caused to person or property on or about the Leased Premises, whether due to negligence on the part of Landlord and notwithstanding whether such acts or omissions be active or passive. *Landlord and Tenant do each hereby release the other from all liability for any accident, damage or injury caused to person or property, provided, this release shall be effective only to the extent that the injured or damaged party is insured against such injury or damage and only if this release shall not adversely affect the right of the injured or damaged party to recover under such insurance policy.*

(Owen's emphasis). In response, United Farm Bureau identifies three other portions of the lease agreement. The Company relies upon the following:

1. USE COMPLIANCE WITH LAWS, SIGNS

... Tenant shall keep the Leased Premises in a clean and orderly condition and shall conduct itself in a careful and safe manner.

\* \* \* \* \* \*

4. ALTERATIONS AND MAINTENANCE OF LEASED PREMISES

\* \* \* \* \* \*

Landlord ... shall make all repairs necessary to maintain the following in the same condition they are now in:

\* \* \* \* \* \*

*except to the extent that the acts of neglect of Tenant,* its employee or invitees *necessitates such repairs.* Tenant shall make all other repairs not required to be made by Landlord to maintain the *Leased Premises* in the same condition they are now in. Tenant accepts the Leased Premises in their present condition. Tenant shall not be obligated under this provision to repair any injury to the *Leased Premises* resulting from fire or other casualty. The preceding sentence is not intended to limit, modify, or *release* Tenant from any liability it may have for damages or destruction.

5. DESTRUCTION

\* \* \* \* \* \*

... Landlord's obligation to restore or repair does not include fixtures or improvements installed or owned by Tenant. The provisions of this Section are not intended to limit, modify or *release* Tenant from any liability it may have for damage or destruction.

(Company's emphasis).

In accordance with Section 1, Owen was to keep the Leased Premises in a clean and orderly condition and to conduct himself in a careful and safe manner. Section 2, however, states, in part, that:

Tenant shall surrender to Landlord the Leased Premises broom clean and in the same order and condition in which Tenant received them, the effects of ordinary wear, acts of God, casualty, insurrection, riot or public disorder excepted.

Inasmuch as the premises was the subject of a casualty, the plain language of the lease agreement relieved Owen of the obligation to return the premises in the same order and condition in which he had received them.

As for Section 4, the lease agreement provides that Owen shall not be obligated under "this provision" to repair any injury to the premises resulting from fire or other casualty. The "preceding sentence," however, is not intended to limit, modify, or release Owen from any liability he may have for damages or destruction. Thus, Section 4 does not obligate Owen to repair any injury to the premises which has resulted from fire or other casualty but also does not release him from any liability he may have for damages or destruction. The language of Section 4, however, does not preclude another section of the lease agreement from releasing Owen from any liability he may have for damages or destruction.

Under Section 5, the lease agreement provides that the "provisions of this Section" are not intended to limit, modify or release Owen from any liability he may have for damage or destruction. Again, however, Section 5 does not preclude another section of the lease agreement from releasing Owen from any liability he may have for damages or destruction.

In accordance with Section 8 of the lease agreement, Freyburger released Owen from all liability for any accident, damage or injury caused to property, provided that the release shall be effective only to the extent that Freyburger, as the injured or damaged party, is insured against such injury or damage. Freyburger was insured against the damage caused by the fire. Even though the section does not specifically mention the "Leased Premises," the house in question fairly falls within the plain language of the provision. Further, while the language may be applied to third party claims, the words used do not limit the scope of the release to such claims. Unlike the earlier sections of the lease agreement, the plain language of

Section 8 released Owen from any liability he may have had for those damages.

 When the insurer claims a right through subrogation, it stands in the shoes of the insured and takes no rights other than those which the insured had. *Hockelberg v. Farm Bureau Insurance Co.* (1980), Ind. App., 407 N.E.2d 1160, 1162. One right which the insured had under Section 8 of the lease agreement was that, "this release shall be effective . . . only if this release shall not adversely affect the right of the injured or damaged party to recover under such insurance policy."

As United Farm Bureau notes, at the time Freyburger collected on the insurance, she signed a subrogation agreement which stated, "The undersigned covenants that I/we have not released or discharged any such claim or demand against such party to parties." Had the Company known of it, the existence of the release might have adversely affected the right of Freyburger to have recovered under her insurance policy.

Nonetheless, given that the only parties to the lawsuit before us are Owen and United Farm Bureau and that the Company paid Freyburger her benefits under the insurance policy, the evidentiary matter most favorable to the Company does not support the conclusion that the release in question "shall adversely affect the right of the injured or damaged party to recover under such insurance policy."

United Farm Bureau stepped into Freyburger's shoes and took no rights other than those which she had at the time. Freyburger had released Owen from any liability to the extent she was covered by insurance, and the Company had paid for the losses in full, without objection. After that time, Freyburger had no recourse against Owen on the damages which had been covered by insurance. Now, United Farm Bureau seeks recourse against Owen on those very damages. As a matter of law, Freyburger had no rights with regard to those damages to which United Farm Bureau could have succeeded when it filed its claim. The trial court therefore properly granted summary judgment to Owen.

The Company further claims the trial court should have granted its motion for summary judgment. Given that the above application of Section 8 controls the issue of summary judgment and that the question of whether Owen had used due care would have been a question of fact, the trial court acted properly when it refused to grant summary judgment in favor of the Company.

Judgment affirmed.

NAJAM, J., concurs.

STATON, J., concurs in result.