# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**CHARLES R. SHEDLAK**
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**TRACEY S. WETZSTEIN**
Merrillville, Indiana

FILED

Dec 19 2012, 8:45 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LBM REALTY, LLC, d/b/a | ) | |
| SUMMER PLACE APARTMENTS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1205-PL-231 |
| | ) | |
| HILLARY MANNIA, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable David C. Chapleau, Judge
Cause No. 71D06-1105-PL-110

**December 19, 2012**

**OPINION – FOR PUBLICATION**

**PYLE, Judge**

After a fire broke out at an apartment building owned by LBM Realty, LLC d/b/a Summer Place Apartments ("LBM"), LBM's insurance company, Greater New York Mutual Insurance Company ("Insurer"), paid LBM's fire loss claim and then filed an insurance subrogation action, in LBM's name, against LBM's tenant, Hillary Mannia ("Mannia"), who is alleged to have negligently started the fire on her balcony patio. Mannia filed a Trial Rule 12(B)(6) motion to dismiss LBM's claims of breach of contract and negligence, and the trial court granted her motion. LBM now appeals from the trial court's dismissal of its complaint against Mannia.

We reverse and remand.

## ISSUE

Whether the trial court erred by granting Mannia's motion to dismiss LBM's complaint.

## FACTS

LBM owns the Summer Place Apartments ("the Apartments") in Granger, Indiana. In March 2010, Mannia signed a one-year lease agreement ("the Lease") and rented an apartment from LBM. Debra Mannia ("Debra") was also listed as a "Resident" under the Lease, and she signed the Lease along with Mannia.[1] (App. 5, 11, 13). The Lease contained the following relevant provisions:

VII. Insurance. In the event the Leased Premises are totally destroyed by fire, rain, wind, or other cause beyond the control of Owner [LBM], or are condemned and ordered torn down by the properly constituted authorities of the state, county or city, then in either of these events

---

[1] Mannia signed the Lease as the "Head of House," and Debra signed as "CoHead of House." (App. 11).

2

this Lease shall cease and terminate as of the date of such destruction. If the Leased Premises are damaged by fire, rain, wind or other cause, beyond the control of Owner, so as to render the same partially untenantable or partially unfit for the use or purpose for which the same are hereby let, and partially fit for the use or purpose for which the same are hereby let, and are repairable within a reasonable time, then this Lease shall remain in full force and effect; but there shall be an abatement in rent in the portion that the damaged portion of the Leased Premises bears to the whole of said Leased Premises. **Owner recommends the Resident obtain renter's insurance.**

\* \* \* \* \*

XIII. <u>Rules</u>. Owner has supplied Resident with a written or printed set of rules, the receipt and reasonableness of which are expressly acknowledged by Resident.[2] Resident shall be bound by and shall comply with, these rules as if they were included in the text of this Lease. Resident further agrees to the adoption by Owner of reasonable amended rules during the Term of this Lease, which amended rules delivered [sic] to Resident in the manner described above for notices and which amended rules shall be binding upon Resident upon delivery. Owner shall have no liability, whatsoever, to Resident, any member of Resident's family, or guest of Resident for any violation of rules by any other resident or guest thereof. Resident receives no rights from these rules.

XIV. <u>Save Harmless Clause</u>. Resident shall indemnify and save harmless Owner from and against any and all claims or actions for damages to persons or property, or for loss of life, and against any and all losses, costs, damages, charges, penalties and expenses, arising out of or in connection with any accident or other occurrence due directly or indirectly to the use and occupancy of the Leased Premises, or any common or related area, by the Resident. This indemnity extends to any and all claims in which it is asserted that Owner itself has been negligent or otherwise at fault.

---

[2] The "Rules and Regulations" sheet attached to the Lease contained the following relevant rule:

7. *Resident must pay repair costs for all damages to Resident's Apartment, Apartment Community facilities, and common areas caused by Resident or members of Resident's household or guests*. This shall include but is not limited to damage to appliances, windows, screens, doors, floors, overflowing toilets, sinks[,] bathtubs, basins, or walls.

(App. 12) (emphasis added). This Rules and Regulations sheet was signed by Mannia as the "Head of House," and by Debra as "CoHead of House." (App. 13).

3

XV.   Waste.   The occurrence of any of the following constitutes the commission of waste by Resident:

   A.   The occurrence or threat of physical damage to the Premises, common areas, or other property of Owner;

   B.   The occurrence or threat of physical injury to, or damage to the property of, other persons lawfully in the Leased Premises, common areas, other living units, or other property of Owner including Owner's employees and agents;

* * * * *

   E.   Other acts or omissions which are or may be likely to cause damage or injury to Owner, Owner's property, Owner's reputation, or other persons.

* * * * *

XVIII.   Exterior of Building, Adjacent Areas and Storage.   "Premises" shall mean only that portion of Owner's property contained within the interior walls of the dwelling unit described herein, and shall not be construed to include any storage shed or closet, balcony, patio, garden, exterior wall or grounds adjacent thereto.   During the Term of this Lease, Resident shall have an addendum for use of any balcony or patio (whether fenced or open) directly accessible from the Leased Premises and any storage shed or closed located thereon, subject to the restrictions set out in this Lease.   Resident shall keep such areas in a clear, and orderly condition at all times.   Resident shall have the risk of loss to any property stored or placed in any storage shed or closet available for use, the use of which shall be strictly limited to storage only.   Resident shall not store any flammable, noxious or hazardous materials in any storage shed or closet at any time, shall keep the storage shed or closet clean and shall remove all items from there upon vacation of the Premises.

XIX.   Miscellaneous Provisions.   Resident, for themselves, their heirs, legal representatives, hereby covenant and agree that:

* * * * *

   E.   Resident has examined the Leased Premises, is satisfied with the physical condition, and Resident's [sic] taking possession is conclusive evidence of receipt of them in good order and repair, except as otherwise specified.   Resident hereby acknowledges that no representation as to condition or repair has been made except as

4

in contained in this Lease and Resident acknowledges that no warranty of condition or promise to decorate, alter, repair, or improve the Leased Premises has been made except such as expressly contained in this Lease.  At the end of the term, Resident shall return the Leased Premises to Owner in the same good condition, reasonable wear and tear excepted.  *Resident is and shall be responsible and liable for any injury or damage done to the Leased Premises, common areas or any property of Owner caused by resident, any occupant, or any other person whom Resident permits to be in or about the Leased Premises*.  Resident shall pay the expense of replacing all glass broken and shall replace all keys lost or broken, and maintain the premises in such condition, order and repair as the same are in commencement of the Lease Term or may be put in during the Lease Term, reasonable wear and tear excepted.

Resident shall permit no waste of the Leased Premises nor allow the same to be done, but Resident shall take good care of the same . . . .

XX.  Entire Agreement.  The terms and conditions contained in this Lease, together with Addendum to Lease attached her[e]to, the Rules and Regulations, the Application For Lease, the Move-In Inspection form and any other agreements which by reference herein are made a part of this Lease, will be conclusively deemed the agreement between the Resident and the Owner, and no modification, waiver, or amendment of the Lease or any of its terms, conditions, or covenants, shall be binding upon the parties unless made in writing and signed by the parties sought to be bound.  If there is more than one Resident, their liability and obligation shall be joint and several.

(App. 7, 8-11) (italicized emphasis added; bolded emphasis in original).

On July 3, 2010, a fire occurred at the Apartments, resulting in damages totaling $743,402.86.  On May 6, 2011, LBM filed a complaint against Mannia, alleging claims of breach of contract and negligence.  Specifically, in regard to the breach of contract claim, LBM alleged that Mannia had breached her contract with LBM when she:

a.  Carelessly and improperly disposed of smoking materials by placing same in a plastic bottle and in close proximity to the vinyl siding on the balcony patio wall of the leased premises; and/or

5

b.  Carelessly and improperly allowed guests to dispose of smoking materials by placing same in a plastic bottle and in close proximity to the vinyl siding on the balcony patio wall of the leased premises[;] and/or

c.  Otherwise failed to comply with her obligation to return the premises in the same condition as when she moved in, reasonable wear and tear excepted.

(App. 2).  In regard to its negligence claim, LBM alleged that Mannia had:

a.  Carelessly and improperly disposed of smoking materials by placing same in a plastic bottle and in close proximity to the vinyl siding on the balcony patio wall of the leased premises; and/or

b.  Carelessly and improperly allowed guests to dispose of smoking materials by placing same in a plastic bottle and in close proximity to the vinyl siding on the balcony patio wall of the leased premises; and/or

c.  Otherwise acted carelessly and negligently.

(App. 3).  LBM, in compliance with Trial Rule 9.2, attached a copy of the Lease to its complaint.

On December 15, 2011, Mannia filed a Trial Rule 12(B)(6) motion to dismiss LBM's claims in "this subrogation action against [her] to recoup the money it paid for the property dam[a]ge."  (App. 20).[3]  In Mannia's brief in support of her motion to dismiss, she discussed the three approaches used by trial courts in the country to resolve the question of whether a landlord's insurer can file a subrogation action against a negligent tenant.  These approaches include: (1) the no-subrogation (or implied co-insured) approach, in which, absent an express agreement to the contrary, a landlord's insurer is

---

[3] Mannia did not attach any documents to her motion to dismiss.  In Mannia's brief in support of her motion to dismiss, she cited to one of LBM's interrogatory answers, which indicated that LBM had received payment in the amount of $766,716.86 from Insurer for the fire loss.

precluded from filing a subrogation claim against a negligent tenant because the tenant is presumed to be a co-insured under the landlord's insurance policy;[4] (2) the pro-subrogation approach, in which a landlord's insurer is allowed to bring a subrogation claim against a negligent tenant absent an express term to the contrary; and (3) the case-by-case approach, in which courts determine the availability of subrogation based on the reasonable expectations of the parties[5] under the facts of each case.[6]  In her motion to dismiss, Mannia alleged that she—as a tenant of LBM—was "an implied co-insured" under LBM's policy with Insurer.  (App. 20).  Mannia requested the trial court to (1) adopt the no-subrogation approach; (2) "rule that insurers cannot subrogate against an insured's tenant after a fire loss[;]" and (3) "dismiss [LBM's] claim under Ind. T.R. 12(B)(6) as a result because [LBM] ha[d] not stated a claim on which relief [could] be granted." (App. 20-21).

---

[4] This no-subrogation approach is sometimes referred to as the "*Sutton* Rule" because the approach was first adopted in *Sutton v. Jondahl*, 532 P.2d 478 (Okla. Ct. App. 1975).

[5] Courts can determine the reasonable expectations of the parties by looking to "the lease as a whole along with other relevant and admissible evidence[.]"  *See Rausch v. Allstate Ins. Co.*, 882 A.2d 801, 816 (Md. 2005) (discussing general principles emanating from basic contract and subrogation law that need to be considered when applying a case-by-case approach), *reconsideration denied.  See also RAM Mutual Ins. Co. v. Rohde*, 820 N.W.2d 1, 14-16 (Minn. 2012) (explaining the following may aid in determining the reasonable expectations of the parties:  (1) the terms of lease between the landlord and tenant; (2) the parties' insurance policies, including the type of insurance purchased by each party; (3) "the principles of equity and good conscience," including whether the leased premises was part of a large multi-unit structure).

[6] For additional explanation of these three approaches, see Robert Vanneman Spake, Jr., Note, *The Roof Is On Fire: When, Absent an Agreement Otherwise, May a Landlord's Insurer Pursue a Subrogation Claim Against a Negligent Tenant?*, 63 WASH. & LEE L.REV. 1743 (2006) (discussing three approaches and indicating states that have adopted the various approaches); and Aleatra P. Williams, *Insurers' Rights of Subrogation against Tenants:  The Begotten Union Between Equity and Her Beloved*, 55 DRAKE L. REV. 541 (2007).  *See also RAM Mutual Ins.*, 820 N.W.2d at 11-12 n.7-9 (listing states that have adopted each approach).

The certified chronological case summary attached to the Notice of Completion of Clerk's Record reveals that the trial court granted Mannia's motion to dismiss the same day she filed it.[7] However, after LBM filed a motion to vacate the dismissal order, the trial court held a hearing on the motion, granted the motion to vacate the dismissal order, and gave LBM an opportunity to respond to Mannia's motion to dismiss.[8]

On February 22, 2012, LBM filed a response to Mannia's motion to dismiss.[9] In its response, LBM stated that Mannia was "insured for this loss by her parents' homeowners' liability insurance policy[.]" (App. 29). LBM argued that the trial court was required to follow the case-by-case approach because that approach had already been adopted by the Indiana Court of Appeals in *United Farm Bureau Mut. Insur. Co. v. Owen*, 660 N.E.2d 616 (Ind. Ct. App. 1996). LBM also contended that the terms of the lease contained no language that Mannia was a co-insured or that would preclude subrogation. LBM asserted that, instead, the lease contained language suggesting that Mannia bore the risk of loss for her negligence and would be responsible for damage to the leased premises and building.

---

[7] We note that Appellant did not include a copy of the chronological case summary in its Appellant's Appendix, and we direct Appellant's attention to Indiana Appellate Rule 50(A)(2)(a), which provides that an Appellant's Appendix "shall contain" a copy of the "chronological case summary[.]" Our Clerk's file has a certified copy of the chronological case summary attached to the Notice of Completion of Clerk's Record, but that does not relieve Appellant from its obligation to comply with Appellate Rule 50. *See State v. Black*, 947 N.E.2d 503, 504 n.7 (Ind. Ct. App. 2011) (referencing the chronological case summary attached to the Notice of Completion of Clerk's Record and noting that our Clerk's file is "part of the record before us").

[8] During the motion to dismiss hearing, the trial court stated that granting the motion to dismiss on the same day "was an error." (Tr. 14).

[9] LBM attached a copy of the Lease to its response.

On March 29, 2012, the trial court held a hearing on Mannia's motion to dismiss. During the hearing, Mannia's counsel indicated that Mannia had renter's insurance and was also covered by her parents' homeowner's policy. The parties also addressed the applicability of the *Owen* case. LBM acknowledged that the *Owen* case did not specifically discuss the three approaches to subrogation but stated that the case had been cited in various treatises as having adopted the case-by-case approach.

Thereafter, on April 27, 2012, the trial court issued an order granting Mannia's motion to dismiss pursuant to Trial Rule 12(B)(6). In its order, the trial court concluded that it was not required to apply a case-by-case approach to the question of whether this subrogation claim could be brought against Mannia. The trial court then reviewed and construed the terms of the Lease and concluded that they were ambiguous regarding Mannia's insurance obligations and her obligation to pay for any fire loss caused by her negligence. Thereafter, the trial court engaged in a public policy analysis regarding allowing subrogation claims against tenants and ultimately adopted the no-subrogation approach, thereby finding that Mannia was a co-insured under LBM's insurance policy. Specifically, the trial court's order provides, in relevant part:

> 2. The issue is the interpretation of the insurance contract between the plaintiff's [LBM's] insured, Summer Place Apartments, and the defendant, tenant, Hillary Mannia. There is no Indiana case law directly on point. The parties dispute the interpretation of the case of United Farm Bureau Mutual Insurance Company v. Owen[,] 660 N.E.2d 616 (Ind. Ct. App. 1996).

> 3. The legal issue can be stated as follows: if a fire loss occurs in a building owned by the landlord, which fire loss is caused by simple negligence of a tenant, may the insurer, after it has paid for the loss, stand in the shoes of the landlord and bring a subrogation action against the tenant? A Matthew Bender & Company Inc., publication "Insuring Real Property", Section 1.04, has analyzed this issue. The author of that treaties [sic] has

9

interpreted the <u>United Farm Bureau Mutual Insurance Company v. Owen</u>, (<u>Owen</u> case) an Indiana Court of Appeals case referred to above, as falling into the category of those cases where subrogation against a tenant is allowed depending upon the intent of the parties as expressed in the lease contract.

\* \* \* \* \*

9. This court does not believe that Indiana law is clearly established by the <u>Owen</u> case on the issue of a subrogation claim against a tenant by the insurance carrier for the landlord based upon purely negligent damage to the premises.  The majority of states that have decided this question have found that a tenant, who pays rent, which includes money used to pay the insurance premiums by the landlord for fire damage insurance, should be considered an additional insured under the policy thereby prohibiting subrogation.  49 AmJur2d and Tenant §482, 43 A AmJur2d Insurance § 1781.

\* \* \* \* \*

11. The public policy analysis requires the court to not only consider this case, but also future cases in the allocation of resources between different parts of our society.  The assignment of property rights clearly made by a legal system either through courts or legislature is helpful to parties in allocating resources.  If the insurance company for plaintiff (landlord) prevails and successfully asserts a subrogation right based on an obligation of every tenant to insure not only their personal property and personal liability for slips and falls of guests who enter their apartment or condominium unit, but also to insure the overall safety of the building from casualty such as fire or water loss, this will not result in clear shifting of liability to all tenants.  The landlord most likely would continue to have coverage to some extent on the building, and there would be an allocation of resources by both the tenants and the landlord for insurance coverage.  This is an insufficient use of resources.  Assigning the property rights such that the landlord has an obligation to overcome a presumption that the tenant is a co-insured of the landlord would clearly put the burden on the landlord to obtain the insurance for the building as it relates to fire or water damage claims.  This would reflect the reality of the market today where most tenants assume that they are only liable for their personal property and should obtain renter's insurance as is suggested strongly in this lease.

12. The lease in this case implies that the landlord will have such general fire insurance paid by the landlord.  Said premiums are paid with the rent supplied by the tenants.  Before the obligation is placed on the tenants to obtain general fire insurance, the court should consider future transaction

costs, which would include enforcing contracts for lease of premises, such as this lawsuit. The courts are currently involved in many immediate possession hearings and hearings regarding damages for rent or waste to the premises by tenants. However, an additional cost to enforce casualty subrogation rights would be borne by landlords, insurance companies and tenants if the presumption of risk of loss by negligently caused fire or water damage is placed on tenants. Determination of cause is expensive litigation. This is certainly not a cost-free transaction. In balance, public policy would be served by having Indiana join the majority of states that have clearly asserted that there is a presumption of the tenant as a co-insured of the landlord and therefore not subject to subrogation by the insurance company providing fire and water loss coverage. This lease did not put a burden on the tenant specifically addressing loss to premises by fire damage and therefore the tenant should be considered an additional insured.

* * * * *

14. For the reason stated above, this court finds the tenant [Mannia] is an additional insured under the plaintiff's [LBM's] fire loss policy and [Mannia's] Motion to Dismiss for failure to state a claim upon which relief can be granted should be Granted.

(App. 50-51, 5-58). LBM now appeals.

DECISION

LBM argues that the trial court erred by granting Mannia's motion to dismiss LBM's complaint. Specifically, LBM contends that the trial court erroneously adopted the no-subrogation approach and concluded that Mannia was a co-insured under LBM's insurance policy.[10]

---

[10] Although not raised by the parties, we pause to discuss a procedural matter. In its order, the trial court stated:

    1.  Both parties have referred to matters outside the pleadings. This court could construe the motion [to dismiss] as a motion for summary judgment, however, there are no factual disputes and [LBM] has had more than sixty (60) days to respond to the Motion to Dismiss and neither party has filed any affidavits. Therefore this shall be decided as a Motion to Dismiss under T. R. Rule 12(B)(6).

(App. 50). We disagree with the trial court to the extent it suggests that it could have chosen whether to treat the motion as one for summary judgment or as a motion to dismiss. Indeed, Trial Rule 12(B) provides that "[i]f, on a motion asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to

Our review of a trial court's grant of a motion to dismiss under Trial Rule 12(B)(6) is *de novo* and requires no deference to the trial court's decision. *Sims v. Beamer*, 757 N.E.2d 1021, 1024 (Ind. Ct. App. 2001). "A motion to dismiss under [Indiana Trial] Rule 12(B)(6) tests the legal sufficiency of a complaint: that is, whether the allegations in the complaint establish *any* set of circumstances under which a plaintiff would be entitled to relief." *Trail v. Boys and Girls Clubs of Northwest Ind.*, 845 N.E.2d 130, 134 (Ind. 2006) (emphasis added). "Thus, while we do not test the sufficiency of the facts alleged with regards to their adequacy to provide recovery, we do test their sufficiency with regards to whether or not they have stated some factual scenario in which a legally actionable injury has occurred." *Id.* When reviewing a Trial Rule 12(B)(6) motion to dismiss, we accept the facts alleged in the complaint as true and view the pleadings in a light most favorable to the nonmoving party and with every reasonable inference in the nonmoving party's favor. *Id.*

We view motions to dismiss under Trial Rule 12(B)(6) "with disfavor because such motions undermine the policy of deciding causes of action on their merits." *McQueen v. Fayette County Sch. Corp.*, 711 N.E.2d 62, 65 (Ind. Ct. App. 1999), *trans. denied.* A "plaintiff need not set out in precise detail the facts upon which the claim is

---

and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56." (Emphasis added). However, we agree with the trial court that this matter was to be treated as a motion to dismiss because it appears that the only matter referred to and considered as part of the parties' arguments was the Lease, which—pursuant to Trial Rule 9.2(A)—became part of the complaint and would not be considered an outside matter. *See* Trial Rule 9.2(A) (providing that "[w]hen any pleading allowed by these rules is founded on a written instrument, the original, or a copy thereof, must be included in or filed with the pleading" and that "[s]uch instrument, whether copied in the pleadings or not, shall be taken as part of the record"). *See also Gregory & Appel, Inc. v. Duck*, 459 N.E.2d 46, 50 (explaining that exhibits attached to and made part of a complaint under Trial Rule 9.2(A) are integral portions of the pleading and consideration of those attached exhibits do not require treating a Trial Rule 12 motion as a motion for summary judgment).

12

based" but "must still plead the operative facts necessary to set forth an actionable claim." *Trail*, 845 N.E.2d at 135. Indeed, under the notice pleading requirements, a plaintiff's complaint needs only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Indiana Trial Rule 8(A)). "Under notice pleading, we review the granting of a motion to dismiss for failure to state a claim under a stringent standard," and we will not affirm a dismissal under Trial Rule 12(B)(6) unless it is "'apparent that the facts alleged in the challenged pleading are incapable of supporting relief under *any* set of circumstances.'" *Id.* (quoting *McQueen*, 711 N.E.2d at 65) (emphasis added).

When filing her motion to dismiss, Mannia did not argue that LBM's claims for negligence or breach of contract were somehow lacking in sufficiency or that the allegations in the complaint did not establish any set of circumstances under which LBM—as landlord—would be entitled to relief. Instead, her motion to dismiss for failure to state a claim was premised on the argument that LBM's complaint—as a subrogation action—*would* fail to state a claim upon which relief could be granted *if* the trial court first adopted the no-subrogation approach. Indeed, by asking the trial court to adopt no-subrogation approach, Mannia recognized that the law in Indiana did not preclude subrogation by a landlord's insurer against a tenant.

To be sure, "[s]ubrogation is a doctrine of equity long recognized in Indiana." *Erie Ins. Co. v. George*, 681 N.E.2d 183, 186 (Ind. 1997). Subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss

13

covered by the policy." BLACK'S LAW DICTIONARY 1467 (8th ed. 2004). "When the insurer claims a right through subrogation, it stands in the shoes of the insured and takes no rights other than those which the insured had." *United Farm Bureau Mut. Ins. Co. v. Owen*, 660 N.E.2d 616, 619 (Ind. Ct. App. 1996). "The ultimate purpose of the doctrine [of subrogation], as with other equitable principles such as contribution, is to prevent unjust enrichment." *Erie*, 681 N.E.2d at 186 (citing 73 Am.Jur. 2D Subrogation § 4 (1974)).

The trial court also correctly acknowledged that Indiana law did not preclude a subrogation action by a landlord's insurer against a tenant, and the trial court correctly recognized that our Court did not adopt a case-by-case subrogation approach in *Owen*. In *Owen*, we affirmed a trial court's entry of summary judgment in favor of a tenant and against an insurer who sought subrogation for a claim it paid to its insured (who was the tenant's landlord) because the specific language of a lease provision at issue released the tenant from property damage liability to the landlord, thereby precluding the insurer— who could only assert a claim available to its insured—from raising a subrogation claim. In that case, we did not discuss or adopt any of the three subrogation approaches, and the question of whether Indiana would adopt a rule regarding subrogation claims by a landlord's insurer against a negligent tenant was never raised.[11]

Despite the current state of Indiana law that permits insurers to bring a subrogation claim against a tenant, the trial court did not test LBM's complaint against the backdrop

---

[11] Additionally, that question has not been raised in other cases where an insurer brought a subrogation claim against an insured's tenant for property damage. *See Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915 (Ind. Ct. App. 2007); *St. Paul Fire & Marine Ins. Co. v. Pearson Const. Co.*, 547 N.E.2d 853 (Ind. Ct. App. 1989), *trans. denied*.

of the law as it existed. Instead, the trial court adopted the no-subrogation approach, thereby precluding LMB's claims against Mannia. It seems that the trial court put the proverbial cart before the horse by first adopting a rule precluding subrogation claims against tenants and then reviewing LBM's complaint in light of that newly adopted rule.

Whether the no-subrogation approach, pro-subrogation approach, or case-by-case approach should be adopted in this State is a matter we leave for another day as the facts in this case are limited at this juncture of the proceedings and have not been developed enough to enable a meaningful review of the issue. Because Indiana law does not currently preclude a landlord's insurer from bringing a subrogation claim against a tenant and because the allegations in LBM's complaint establish a set of circumstances under which it would be entitled to relief, LBM's complaint states claims upon which relief could be granted. Accordingly, we reverse the trial court's order granting Mannia's motion to dismiss and remand this case for further proceedings.

Reversed and remanded.

FRIEDLANDER, J., and BROWN, J., concur.

15