

**FILED**

Jul 13 2015, 8:42 am

Kevin S. Smith

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT
SANITARY DISTRICT OF THE CITY
OF HAMMOND, INDIANA

A. Scott Chinn
Jane Dall Wilson
Timothy J. Moriarty
Faegre Baker & Daniels LLP
Indianapolis, Indiana

Joseph P. Allegretti
Sanitary District of the City of
Hammond
Munster, Indiana

ATTORNEYS FOR CROSS-APPELLEE
CITY OF HAMMOND, INDIANA

Kristina C. Kantar
City of Hammond Law Department
Hammond, Indiana

Kevin C. Smith
Smith Sersic
Munster, Indiana

ATTORNEYS FOR APPELLEE TOWN
OF GRIFFITH, INDIANA, ET AL.

Nicholas K. Kile
Bart A. Karwath
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE TOWN
OF HIGHLAND, INDIANA, ET AL.

Brian W. Welch
Margaret M. Christensen
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

Robert F. Tweedle
Law Offices of Robert F. Tweedle
Highland, Indiana

Rhett L. Tauber
Jared R. Tauber
Tauber Law Offices
Schererville, Indiana

ATTORNEYS FOR
APPELLEE/CROSS-APPELLANTS
CITY OF WHITING, INDIANA, ET
AL.

Michael A. Wukmer
Thomas K. Downs
Mark R. Alson
Audrey K. Hagedorn
Ice Miller LLP
Indianapolis, Indiana

William T. Enslen
Enslen, Enslen & Matthews
Hammond, Indiana

Sanitary District of the City of Hammond, Indiana and the City of Hammond, Indiana,[1]

*Appellants-Defendants,*

v.

Town of Griffith, Indiana; Town of Highland, Indiana, et al.; and City of Whiting, Indiana, et al.,

*Appellees-Plaintiffs,*

and

City of Whiting, Indiana, et al.,

*Cross-Appellant-Plaintiff,*

v.

City of Hammond, Indiana,

*Cross-Appellee-Defendant.*

July 13, 2015

Court of Appeals Case No. 45A03-1404-PL-125

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Cause Nos. 45D01-1309-PL-79, 45D01-1309-PL-83, 45D01-1309-PL-85

**Kirsch, Judge.**

---

[1] We note that the trial court granted the City of Hammond's motion to dismiss it from the case. However, "[u]nder Indiana Appellate Rule 17(A), '[a] party of record in the trial court or Administrative Agency shall be a party on appeal.'" *Hoosier Outdoor Adver. Corp. v. RBL Mgmt., Inc.,* 844 N.E.2d 157, 162 (Ind. Ct. App. 2006) (quoting Ind. Appellate Rule 17(A)).

This case focuses on whether the Sanitary District of the City of Hammond, Indiana ("the District") had the authority to cancel three long-term wastewater services contracts between it and the Town of Griffith, Indiana, the Town of Highland, Indiana, and the City of Whiting, Indiana (collectively "the Customer Communities"). Claiming that the contracts had become financially untenable and that the Customer Communities would not agree to reform the contracts, the District made a formal finding under Indiana Code section 5-22-17-5 that funds were not appropriated or otherwise available to support the continuation of performance of the contracts and passed a resolution cancelling the contracts. The Customer Communities sued the District and filed motions for summary judgment and judgment on the pleadings. The trial court granted the motions and held that the District exceeded its statutory authority when it passed the resolution, that the resolution purporting to cancel the contracts had no effect, and that the contracts were to remain in full force. The trial court ordered the parties to arbitrate all disputes arising under the contracts. The District appeals, raising the following restated issues for our review:

> I. Whether the trial court erred in holding that the District was not statutorily authorized to cancel the wastewater services contracts pursuant to Indiana Code section 5-22-17-5(a); and
>
> II. Whether the trial court erred in ordering the parties into arbitration rather than conducting judicial review where there is no dispute as to performance under the Treatment Agreements.

[2] We affirm.[2]

## Facts and Procedural History[3]

[3] The District is a municipal corporation and statutorily-created special taxing district, which is comprised of the City of Hammond ("Hammond") and the Town of Munster. The District operates a publicly-owned treatment works facility for the collection and treatment of sanitary sewage wastewater. In 1994, the District entered into individual wastewater collection and treatment agreements with the Town of Griffith ("Griffith") and the Town of Highland ("Highland") and, in 1995, with the City of Whiting ("Whiting") (we will refer to the agreements collectively as "the Treatment Agreements"). Under the Treatment Agreements, the District accepted and treated wastewater from each of the Customer Communities. The current terms of each contract expire on December 31, 2018, with an option for the Customer Communities to extend the Treatment Agreements for an additional twenty-five years, through 2043.

[4] Under the Treatment Agreements, the District was required to (1) "establish a user charge system which assures that each recipient of waste treatment services

---

[2] The City of Whiting files a cross-appeal and raises the following restated and consolidated issue: whether the trial court erred in dismissing the City of Hammond from the litigation and in refusing to allow Whiting to conduct discovery before dismissing the City of Hammond. As we are affirming the trial court, we find that Whiting's cross-appeal is moot.

[3] Oral argument was heard on this case on February 11, 2015 in Indianapolis. We commend counsel on the quality of their written and oral advocacy.

will pay its proportionate share of the costs of operations and maintenance," such payment is proportionate to the user's contribution to the total wastewater system, (2) "review its user charges annually and revise them periodically to reflect actual treatment works operation and maintenance cost," and (3) "generate sufficient revenue to offset the cost of all treatment works operation and maintenance." *Appellant's App*. at 46-47, 109-10, 449-50. The Treatment Agreements further provided that the Customer Communities "shall pay [their] fair share of the annual operation and maintenance costs, including replacement costs and payment-in-lieu of taxes, and capital costs not financed by debt, in proportion to [their] use of the facilities." *Id*. at 56, 119, 459. The Treatment Agreements also contained provisions regarding procedures and methodologies by which the charges to the Customer Communities for operation and maintenance costs and capital costs would be modified, relating to and governing water flow, and addressing emergency water flow situations, where wastewater would be held in holding basins owned by the Customer Communities to reduce the flow into the District's system. *Id*. at 56-69, 119-33, 459-72. The Treatment Agreements additionally provided that any disagreements under the agreements must be submitted to binding arbitration. *Id*. at 69-71, 133-35, 472-74.

[5] In a letter dated July 25, 2013, the District, through its legal counsel, sent notice to the Customer Communities "of the need to renegotiate the material terms and conditions" of the Treatment Agreements. *Id*. at 80, 143, 481. The letter provided that if the District and the Customer Communities could not

"successfully negotiate new terms that address certain changed circumstances and current realities the [District's] system is facing and provide sufficient revenue for system operation and improvements, then [the District] must avail itself of all contractual and legal remedies regarding the existing [Treatment Agreements]." *Id.* at 80, 143, 481. The letter further asserted that the Customer Communities (1) had exceeded their contract capacities for water flow, which was negatively impacting the District's system, (2) were not contributing to the costs of certain capital projects, (3) had rates that were lower than the rates charged to Hammond's own residents, and (4) were being subsidized by the District. *Id.* at 80-81, 143-44, 481-82. The District stated that a rate increase was required from the Customer Communities "under a new contractual agreement" and notified of its intent "to enforce the flow limitation by mechanically restricting the [Customer Communities'] flow into [the District.]" *Id.* at 81, 144, 482. The District further stated it would no longer execute any sanitary sewer certifications to permit new sewer connections in the Customer Communities. *Id.* at 81, 144, 482.

[6] The Customer Communities wrote response letters to the District and disputed several of the District's allegations. In addition to disagreeing with the District's assertions, the Customer Communities reminded the District of their right to arbitration under the Treatment Agreements. On August 27, 2013, the District's Board of Sanitary Commissioners ("the Board") met and reviewed the Treatment Agreements. The Board considered the following issues: (1) the contract methodology for determining the rates paid by the Customer

Communities had become outdated, resulting in the District's residents paying a higher share of the costs; (2) capital improvements that the District was required to make under the Clean Water Act and the cost of these improvements; (3) the Customer Communities were exceeding wet weather flow limits contained in the Treatment Agreements, which negatively affected the District's system; (4) such excessive flows had hindered the District's completion and implementation of a mandated Long Term Control Plan; and (5) the District was operating at a net operating loss. *Id*. at 153-56. The Board made a determination that, "funds are not appropriated or otherwise available to support continuation of performance of the [Treatment Agreements]." *Id*. at 157. The Board then passed Resolution 38-2013 and found that the Treatment Agreements were thereby cancelled. *Id*.

[7] On August 28, 2013, the District sent letters to the Customer Communities informing them of its decision to cancel the Treatment Agreements. In the letter, the District provided "immediate assurance that [the District] will continue to perform the services contemplated by the [Treatment Agreements], including treating [the Customer Communities'] wastewater for a reasonable amount of time (to be negotiated between the parties), to allow [the Customer Communities] to make other arrangements for treatment of [the Customer Communities'] flow." *Id*. at 85, 151, 492. The letter further informed the Customer Communities that, "[a]t no time during this Transition Period will [the District] take action to restrict flow (except as consistent with the former

agreement), nor will it take any action against the interest of public health." *Id.*
at 85, 151, 492.

[8] Shortly after receiving the District's letter, notifying them that the Treatment
Agreements had been canceled, the Customer Communities each filed a
complaint against the District, asserting that the District's purported
cancellation of the Treatment Agreements was not authorized and seeking an
order requiring the District to proceed to arbitration. Whiting and Highland
both filed a complaint against Hammond in addition to the District. Both the
District and Hammond filed motions to dismiss; Hammond sought dismissal
on the basis that it was not a party to any of the Treatment Agreements, and the
District sought dismissal on the basis that statutory judicial review was the only
remedy available to the Customer Communities. Both Whiting and Griffith
filed motions for judgment on the pleadings, or in the alternative, summary
judgment; Highland filed a motion for judgment on the pleadings.

[9] On January 8, 2014, the trial court issued an order, granting the Customer
Communities' dispositive motions. The trial court found that the District had
no statutory authority to pass Resolution 38-2013 and that the Treatment
Agreements should remain in full force and effect. The trial court further
ordered into binding arbitration all disputes that arose under the Treatment
Agreements. The District and Hammond filed motions to correct error, asking
the trial court to clarify whether Hammond was dismissed from the cases. On
March 20, 2014, the trial court granted the motions to correct error and

specified that Hammond was dismissed from Whiting's and Highland's actions. The District now appeals.

# Discussion and Decision

[10] In its order, the trial court granted the Customer Communities' motions for summary judgment and judgment on the pleadings and found the District had no authority to pass Resolution 38-2013 and to cancel the Treatment Agreements. A judgment on the pleadings pursuant to Indiana Trial Rule 12(C) is proper only when there are no genuine issues of material fact and the facts shown by the pleadings clearly entitled the movant to judgment. *Holmes v. Celadon Trucking Servs. of Ind., Inc.*, 936 N.E.2d 1254, 1255 (Ind. Ct. App. 2010) (citing *Wagle v. Henry,* 679 N.E.2d 1002, 1004 (Ind. Ct. App. 1997)). If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Trial Rule 56. *Id.* at 1255-56. "Matters outside the pleadings" are those materials that would be admissible for summary judgment purposes, such as depositions, answers to interrogatories, admissions, and affidavits. *Fox Dev., Inc. v. England,* 837 N.E.2d 161, 164 (Ind. Ct. App. 2005).

[11] When reviewing a Rule 12(C) motion, we may look only at the pleadings and any facts of which we may take judicial notice, with all well-pleaded material facts alleged in the complaint taken as admitted. *Consol. Ins. Co. v. Nat'l Water Servs., LLC*, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013), *trans. denied.* The

pleadings consist of a complaint and an answer, a reply to any counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint. *Id.* "Pleadings" also consist of any written instruments attached to a pleading, pursuant to Ind. Trial Rule 9.2. *LBM Realty, LLC v. Mannia,* 981 N.E.2d 569, 576 n.10 (Ind. Ct. App. 2012); *see also* Ind. Trial Rule 10(C) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

[12] Here, the parties did not designate evidence outside the pleadings for judicial consideration, and nothing in the record suggests that the trial court considered any evidence outside of the pleadings in reaching its decision. Therefore, we shall treat the Customer Communities' motions as motions for judgment on the pleadings. A motion for judgment on the pleadings pursuant to Rule 12(C) attacks the legal sufficiency of the pleadings. *Fox Dev., Inc.*, 837 N.E.2d at 165. The test to be applied when ruling on a Rule 12(C) motion is whether, "in the light most favorable to the non-moving party and with every intendment regarded in his favor," the complaint is sufficient to constitute any valid claim. *Id.* In applying this test, we may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice. *Id.* The standard of review is de novo, and we will affirm the trial court's grant of a Rule 12(C) motion for judgment on the pleadings when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. *Id.*

In the present case, the trial court's decision rests on conclusions regarding the applicability of a statute. The interpretation of a statute is a legal question that is reviewed de novo. *Carter v. Carolina Tobacco Co.*, 873 N.E.2d 611, 625 (Ind. Ct. App. 2007) (citing *Golden Rule Ins. Co. v. McCarty*, 755 N.E.2d 1104, 1106 (Ind. Ct. App. 2001), *trans. denied*). Statutory interpretation is the responsibility of the court and within the exclusive province of the judiciary. *McCarty*, 755 N.E.2d at 1106-07 (citing *Miller Brewing Co. v. Bartholomew Cnty. Beverage Co.*, 674 N.E.2d 193, 200 (Ind. Ct. App. 1996), *trans. denied*). The first and often the last step in interpreting a statute is to examine the language of the statute. *Id*. at 1107. When confronted with an unambiguous statute, we do not apply any rules of statutory construction other than to give the words and phrases of the statute their plain, ordinary, and usual meaning. *Id*.

## I. Authority to Pass Resolution

The District argues that the trial court erred when it concluded that the District did not have statutory authority to pass Resolution 38-2013 and to cancel the Treatment Agreements. The District claims that it was within its statutory authority to cancel the Treatment Agreements pursuant to Indiana Code section 5-22-17-5. The District contends that the trial court's determination that the Treatment Agreements were excluded from the provisions of Article 22 was in error because such contracts were specifically authorized under the plain language of Indiana Code section 5-22-6-1 and were not excluded under Indiana Code section 5-22-1-3(a)(1).

[15] In this case, the District cancelled the Treatment Agreements pursuant to Indiana Code section 5-22-17-5, which states, in pertinent part, "[w]hen the fiscal body of the governmental body makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of a contract, the contract is considered canceled." Ind. Code § 5-22-17-5(a). The District alleged that, because of financially dire circumstances surrounding the long-term Treatment Agreements, the Board determined that the District could no longer afford performance under the Treatment Agreements and, therefore, passed Resolution 38-2013, which mirrored the contract cancellation language in Indiana Code section 5-22-17-5. Because they followed the language of the statute, the District asserted that it properly cancelled the Treatment Agreements because Indiana Code section 5-22-17-5 applied to the District.

[16] In its order finding that the District had no statutory authority to cancel the Treatment Agreements, the trial court found that, although the District followed the procedure under Indiana Code section 5-22-17-5 when it cancelled the Treatment Agreements, section 5-22-17-5 did not apply to the Treatment Agreements. This is because the Treatment Agreements fell under an exception set forth in Indiana Code section 5-22-1-3(a)(1), which provides that Article 22, which is entitled the Public Purchasing Statute, does not apply to contracts between governmental bodies. The language of Indiana Code section 5-22-1-3(a)(1) states, in pertinent part: "[T]his article does not apply to the following types of activities . . .[a] contract between governmental bodies except for a

contract authorized under this article." The trial court further found that the Treatment Agreements were not agreements authorized under Article 22 ("the Public Purchasing Statute"). The trial court concluded that, because the Treatment Agreements fell under an exclusion to the Public Purchasing Statute, Indiana Code section 5-22-17-5(a) did not apply, and the District had no statutory authority to pass Resolution 38-2013 and cancel the Treatment Agreements.

[17] Under the plain language of section 5-22-1-3(a)(1), the Public Purchasing Statute does not apply to contracts between governmental bodies except for certain contracts authorized under the Public Purchasing Statute. The District concedes, and agrees with the trial court, that the Treatment Agreements are contracts between governmental bodies and would, therefore, be excluded unless authorized. However, the District claims that the Treatment Agreements are authorized under the Public Purchasing Statute because they are authorized under Indiana Code section 5-22-6-1, which states, "[t]he purchasing agency of a governmental body may purchase services using any procedure the governmental body or the purchasing agency of the governmental body considers appropriate." We disagree.

[18] The language of Indiana Code section 5-22-6-1 does not explicitly authorize contracts such as the Treatment Agreements. It is a procedural statute that merely acknowledges that the purchasing agency of a governmental body may purchase services using any procedure it considers appropriate. Indiana Code section 5-22-6-1 has been interpreted by this court as recognizing the discretion

granted to governmental entities in awarding contracts for services and that strict bidding procedures need not be followed in awarding government contracts for services. *See Hamrick's Diesel Serv. & Trailer Repair, LLC v. City of Evansville ex rel. Bd. of Pub. Works*, 935 N.E.2d 764, 767 (Ind. Ct. App. 2010) (concluding that unsuccessful bidder on government contract for services did not have standing in suit against city for damages after contract was awarded to bidder that did not meet requirements specified in bid announcement), *trans. denied*; *Harmony Health Plan of Ind., Inc. v. Ind. Dep't of Admin.*, 864 N.E.2d 1083, 1091-92 (Ind. Ct. App. 2007) (concluding that unsuccessful bidder on government contract for services lacked standing to seek judicial review of the rejection of its bid as it was not harmed when not awarded the contract because government body had authority to exercise discretion under public purchasing statutes to decide who would receive contracts to provide services), *trans. denied*; *Trans-Care, Inc. v. Bd. of Comm'rs of the Cnty. of Vermillion*, 831 N.E.2d 1255, 1259 (Ind. Ct. App. 2005) (concluding that unsuccessful bidder lacked standing to challenge government body's award of contract for provision of services to another business because when party submits a proposal to perform personal services, it has no legal right to have its bid considered because the procurement of personal services is not included within the scope of the Public Purchasing Statute). Thus, section 5-22-6-1 merely gives a governmental body discretion in deciding the procedures it wants to use for purchasing services and is, therefore, not a specific authorization for governmental bodies to enter into contracts to purchase services.

[19] We conclude that, because the Treatment Agreements are contracts between governmental bodies, they are excluded from the scope of the Public Purchasing Statute unless otherwise authorized in the Public Purchasing Statute. Contrary to the District's contention, we do not find that Indiana Code section 5-22-6-1 specifically authorizes contracts for services between governmental bodies. As such, under Indiana Code section 5-22-1-3(a)(1), the Public Purchasing Statute does not apply to the Treatment Agreements, and the District was not within its statutory authority to cancel the Treatment Agreements pursuant to Indiana Code section 5-22-17-5. The trial court did not err in its determination that the District did not have statutory authority to cancel the Treatment Agreements.

[20] The District also argues that the trial court erred when it failed to order judicial review of the District's decision to cancel the Treatment Agreements. The District asserts that, pursuant to Indiana Code section 5-22-19-1, because the Treatment Agreements were subject to the Public Purchasing Statute, and because it followed the requirements of Indiana Code section 5-22-17-5 in cancelling the agreements, its determination was final and conclusive and subject to judicial review under Indiana Code section 5-22-19-2. We note that the statutory sections under which the District contends that judicial review is required are part of the Public Purchasing Statute. As such, because we have concluded that the Public Purchasing Statute does not apply to the Treatment Agreements, judicial review under Indiana Code sections 5-22-19-1 and -2 is likewise not available.

# II. Arbitration

[21] The District argues that the trial court erred when it ordered the parties to participate in arbitration for any disputes arising under the Treatment Agreements. The District contends that the complaints filed by the Customer Communities did not identify any disputes over any aspect of performance of the contracts, and therefore, arbitration under the agreements is not required. The District alleges that the only dispute raised by the Customer Communities concerned the attempted cancellation of the Treatment Agreements. The District further asserts that there are no pending disputes arising under the Treatment Agreements because the District has not restricted flow since passing Resolution 38-2013 and no requests for sewer certifications have been presented; accordingly, there is nothing to arbitrate.

[22] In its order, the trial court directed that all disputes that arose under the Treatment Agreements were ordered into binding arbitration. Paragraph 10A of the Treatment Agreements outlines the arbitration process to be utilized "[i]f a dispute arises concerning any right or obligation under this agreement, including capacity reservation of rights or allocation of capital costs for existing or future improvements by the District." *Appellant's App*. at 69, 133, 472. Thus, by entering into the Treatment Agreements with the Customer Communities, the District agreed that, if a dispute arose regarding rights or obligations under the Treatment Agreements, such dispute would be submitted to binding arbitration. Arbitration was, therefore, the method that all of the parties agreed to use if a contractual dispute arose during the contractual period, and the

Treatment Agreements require arbitration when a dispute arises concerning any right or obligation under the Treatment Agreements. We, therefore, conclude that the trial court did not err when it ordered the parties into binding arbitration as to all disputes concerning the Treatment Agreements.

[23] We further conclude that, even if we accepted the District's argument that it was authorized to cancel the Treatment Agreements pursuant to Indiana Code section 5-22-17-5, such cancellation would have been premature because the Treatment Agreements require arbitration when disputes arise. All of the District's issues that formed the basis for its purported cancellation of the Treatment Agreements were disputes that arose concerning rights and obligations under the agreements and were, therefore, required to be sent to arbitration for resolution. Therefore, the Treatment Agreements required arbitration before the District could have even attempted to cancel the contracts pursuant to Indiana Code section 5-22-17-5. Because the District did not submit its issues to arbitration, it did not follow the provisions of the Treatment Agreements that it entered into with the Customer Communities, and even if it had been statutorily authorized, the District could not have cancelled the Treatment Agreements without first submitting its disputes to arbitration.

[24] We conclude that the trial court did not err in finding that the District lacked statutory authority to cancel the Treatment Agreements because the Public Purchasing Statute did not apply to the Treatment Agreements. The trial court also did not err in ordering the parties to arbitration for all disputes concerning the Treatment Agreements, as arbitration was mandated by the Treatment

Agreements for all such disputes. We further determine that, even if the Public Purchasing Statute did apply to the Treatment Agreements, pursuant to paragraph 10A, the parties were required to submit to arbitration before any other action could be taken regarding any disputes the parties had under the Treatment Agreements.[4]

Affirmed.

Crone, J., concurs.

Robb, J., dissents with separate opinion.

---

[4] Under the procedural posture of this case, we are unaware of what, if any, steps the District took to reconcile its disputes with the Customer Communities under the Treatment Agreement prior to its first communication to the Customer Communities alerting them of the issues. However, we do note that the Treatment Agreements required that operation and maintenance rates be reviewed annually and contained procedures for how to compute adjusted rates annually. *Appellant's App*. at 58-60, 122-24, 461-64. The Treatment Agreements also included procedures on how to determine the Customer Communities' participation in capital costs associated with new projects. *Id*. at 61-63, 125-27, 464-66. We, therefore, believe that, in the future, when encountering disputes regarding rates or capital costs, the District should first adhere to the contract provisions contained in the Treatment Agreements, which the parties, by entering into and signing the Treatment Agreements, agreed to abide by during the contract term.

# IN THE
# COURT OF APPEALS OF INDIANA

Sanitary District of the City of Hammond, Indiana and the City of Hammond, Indiana,

*Appellants-Defendants,*

v.

Town of Griffith, Indiana; Town of Highland, Indiana, et al.; and City of Whiting, Indiana, et al.,

*Appellees-Plaintiffs,*

and

City of Whiting, Indiana, et al.,

*Cross-Appellant-Plaintiff,*

v.

City of Hammond, Indiana,

*Cross-Appellee-Defendant.*

Court of Appeals Case No.
45A03-1404-PL-125

**Robb, Judge, dissenting**

[26] I respectfully dissent from the majority's determination that the District did not have statutory authority to cancel the Treatment Agreements pursuant to

Indiana Code section 5-22-17-5 and was therefore not entitled to judicial review.

[27] Indiana Code section 5-22-17-5(a) provides that "[w]hen the fiscal body of the governmental body makes a written determination that funds are not appropriated or otherwise available to support continuation of performance of a contract, the contract is considered canceled."  In order to be entitled to cancel a contract pursuant to this provision, the contract must be subject to the Public Purchasing Statute, which was enacted in 1997 and, in general, governs "every expenditure of public funds by a governmental body," Ind. Code § 5-22-1-1, subject to certain exceptions and limitations, Ind. Code §§ 5-22-1-2, 5-22-1-3; *City of Fort Wayne v. Pierce Mfg., Inc.*, 853 N.E.2d 508, 512 (Ind. Ct. App. 2006). As relevant to this case, the Public Purchasing Statute does not apply to "[a] contract between governmental bodies *except for a contract authorized under this article.*"  Ind. Code § 5-22-1-3(a)(1) (emphasis added).  As all parties concede this is a contract between governmental entities, the Treatment Agreements are therefore not subject to the Public Purchasing Act *unless* they are authorized under Indiana Code article 5-22.  The District contends the Treatment Agreements are so authorized; the trial court concluded and the majority agrees they are not.  I agree with the District.

[28] The District relies on Indiana Code section 5-22-6-1 as the authority for the Treatment Agreements.  According to that section, "[t]he purchasing agency of a governmental body may purchase services using any procedure the governmental body or the purchasing agency of the governmental body

considers appropriate." Governmental bodies may "may adopt rules" and "establish policies" to that end. Ind. Code § 5-22-6-2. In other words, under Indiana Code chapter 5-22-6, "government bodies are afforded nearly absolute discretion in purchasing services." *Hamrick's Diesel Serv. & Trailer Repair, LLC v. City of Evansville ex rel. Bd. of Pub. Works*, 935 N.E.2d 764, 766 (Ind. Ct. App. 2010). The majority interprets this section as "merely giv[ing] a governmental body discretion in deciding the procedures it wants to use for purchasing services" and not as a specific authorization to actually purchase those services. *See* slip op. at ¶ 18.

[29] I believe this interpretation too narrowly construes Indiana Code section 5-22-6-1. There would be no reason for the legislature to set forth in the Public Purchasing Statute that a governmental body has discretion in deciding *how* to purchase services if it was not also authorizing the governmental body to *make* the purchase in the first place. I believe the intent of the legislature is effected by interpreting the statute as follows: the governmental body may purchase services and may use any procedure the governmental body considers appropriate.

[30] Again, Indiana Code section 5-22-1-3(a)(1) excludes from the Public Purchasing Statute contracts between governmental bodies *unless* the contracts are authorized under the statute itself. Because I agree with the District that the Treatment Agreements were authorized by Indiana Code section 5-22-6-1, I would hold that the trial court erred in determining the District was not statutorily authorized to cancel the agreements. The District made the

determination required by Indiana Code section 5-22-17-5 to cancel the Treatment Agreements, and the merits of that determination are now subject to judicial review. Ind. Code § 5-22-19-2. I would reverse and remand for the trial court to review the District's determination accordingly.